UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL C. MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>HEIDI WASHINGTON, *et al.*,<br><br>Defendants. | Case No. 21-cv-10627<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS (ECF NO. 24)**

I.  **Introduction**

Plaintiff Michael C. Morris, a prisoner proceeding pro se, sues various employees of the Michigan Department of Corrections (MDOC), alleging Eighth Amendment violations and intentional infliction of emotional distress. ECF No. 1, PageID.7. Morris alleges that in November and December 2020, while he was confined at the Cooper Street Correctional Facility (JCS), defendants failed to implement adequate measures to combat COVID-19, such as social distancing, mask-wearing, and distributing KN95 masks instead of cloth masks. *Id.* at PageID.7, 17-18. He also alleges that defendants moved several inmates known to be positive for COVID-19 to

his housing unit.  *Id.* at PageID.17.  After testing positive for COVID-19 in December 2020, Morris allegedly continues to experience symptoms and seeks monetary damages against MDOC director Heidi Washington, MDOC deputy director Jeremy Bush, JCS warden Michelle Floyd, and JCS assistant deputy warden David Clifton.  *Id.* at PageID.7-8, 21.[1]

The Honorable Shalina D. Kumar referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 29.  Defendants move to dismiss the case.  ECF No. 24.  For the reasons below, the Court **RECOMMENDS** that defendants' motion be **GRANTED**.

II.   Analysis

A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when

---

[1] On initial screening under the Prison Litigation Reform Act, the court dismissed MDOC and Governor Gretchen Whitmer as defendants and dismissed the official-capacity claims against the remaining defendants. ECF No. 5, PageID.51-54.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id*.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

Although the plausibility of a complaint is usually assessed on the face of the complaint, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).  A court may also consider "public records, items appearing in the record of the case and exhibits attached to

defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). And "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money*, 508 F.3d at 335-36.

Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

**B.**

Defendants seek dismissal on multiple grounds, arguing that the Eighth Amendment claim fails on the merits, that Morris has not alleged their personal involvement, and that they are entitled to qualified immunity. The Court addresses each of these arguments in turn, concluding that Morris has failed to state a plausible Eighth Amendment claim.

**1.**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth

4

Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component. *Id.* at 834. For the objective component, Morris must show that defendants' acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm." *Id.* The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

The test for deliberate indifference does not require "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. But prison officials "'may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 844).

5

The objective component is met here, as "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death," particularly in a prison setting. *Id.*

For the subjective component, "[t]he key inquiry is whether the [defendants] 'responded reasonably to th[is] risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844). In *Wilson*, the Sixth Circuit evaluated whether the Bureau of Prisons (BOP) responded reasonably to the risks COVID-19 posed to inmates. *Id.* at 840-41. The court vacated a preliminary injunction, finding that the plaintiffs did not show a likelihood of success on the merits of their Eighth Amendment claim. *Id.* at 843. The plaintiffs were unlikely to succeed on the merits because the BOP had reasonably responded to the risks of COVID-19 with a plan "to reduce the risk of COVID-19 spread," which included:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* at 841 (brackets added in *Wilson*); *see also Cameron v. Bouchard*, 818 F. App'x 393, 355-96 (6th Cir. 2020) (holding that pretrial detainees challenging the COVID-19 protocols in Oakland County Jail were unlikely to prevail on the merits of an Eighth Amendment claim because the jail officials implemented preventive measures like those in *Wilson*).

Federal courts in Michigan have dismissed similar Eighth Amendment claims against MDOC officials when the prison's COVID-19 measures were like those implemented by the BOP in *Wilson*. *See, e.g.*, *Watson v. Washington*, No. 20-12021, 2021 WL 4480279, at *3-4 (E.D. Mich. Sept. 30, 2021); *Velez v. Emerson*, No. 1:20-cv-516, 2020 WL 4883992, at *5 (E.D. Mich. Aug. 19, 2020). As noted in those cases, MDOC director Washington issued memoranda (DOMs) detailing "the numerous steps undertaken by the MDOC to protect staff and prisoners from the spread of COVID-19." *Watson*, 2021 WL 4480279, at *3; *see also Sanders v. Washington*, No. 1:21-cv-510, 2022 WL 575179, at *16 (W.D. Mich. Feb. 25, 2022).

DOM 2020-30R7 was in effect during the relevant period, November and December 2020. ECF No. 24-2, PageID.147. The many preventive measures under that policy included mask-wearing; screening criteria for entering MDOC facilities; social distancing; quarantining prisoners who

were or suspected of being COVID-19 positive; testing prisoners taken into MDOC's custody; suspending in-person visitation; limiting group gatherings; and imposing policies for transfers and cell moves, hygiene, and food service. *Id.* at PageID.147-158.[2]

The DOM 2020-30R7 policies mirror those implemented by the BOP in *Wilson*, and they address Morris's specific concerns about mask-wearing, social distancing, and cell moves. Contrary to Morris's argument that defendants failed to act, MDOC's extensive steps to mitigate the spread of COVID-19 among inmates "demonstrate the opposite of a disregard of a serious health risk." *Hill v. Whitmer*, 471 F. Supp. 3d 803, 808 (W.D. Mich. 2020). And even if those policies are imperfect because, for instance, social distancing is impossible in a crowded prison setting, they still comprise a reasonable response. *See Wilson*, 961 F.3d at 841, 843 ("[E]ven if the BOP's response has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk").

Morris relies on a Fifth Circuit opinion to argue that the Eighth Amendment is violated when inmates' personal safety is threatened. ECF No. 27, PageID.235 (citing *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974)).

---

[2] Because DOM 2020-30R7 is a public record central to Morris's claim, the Court may consider it in deciding defendants' motion to dismiss. *See Bassett*, 528 F.3d at 430.

The *Gates* court found that inmates were entitled to Eighth Amendment relief because of a host of deplorable conditions, including a contaminated water supply; frayed and exposed electric wiring; inadequate firefighting equipment; inoperable toilets and showers; and inadequate medical care. *Gates*, 501 F.2d at 1300.  But the *Gates* court did not address the standard for imposing liability against prison officials.  Instead, the prison system and governor were challenging "the major physical facility renovations and administrative reforms" ordered by the district court.  *Id*. at 1294-95.  In contrast, Morris requests $1 million in damages from each defendant.  ECF No. 1, PageID.8.  For Morris's claims, the deliberate indifference standard applies, and the Court must assess whether defendants acted reasonably in response to the COVID-19 risks.  *Wilson*, 961 F.3d at 840.

For the reasons stated, defendants' response to the risks of COVID-19 was reasonable as a matter of law, and Morris has not stated a plausible Eighth Amendment claim.

### 2.

Morris's claims also fail because he has not pleaded defendants' personal involvement.  To state a cognizable claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556

9

U.S. at 676; see also *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action). Proximity to the wrongdoer does not convey responsibility. *Id.*

Morris alleges that defendants failed to prevent the spread of COVID-19 by enforcing the proper health and safety measures. ECF No. 1, PageID.7, 17-18. He does not describe each defendant's role but broadly alleges that Washington "handed down" unspecified orders to Bush, Floyd, and Clifton, and that defendants "promoted negligence" in practicing social distancing and allowed the transfer of COVID-19-positive inmates to Morris's unit. ECF No. 1, PageID.17, 19. Such blanket allegations against "defendants" generally, without stating with particularity what *each* defendant did to violate the asserted constitutional right, is not enough. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Interpreted liberally, the complaint alleges that MDOC director Washington and deputy director Bush had to develop MDOC's COVID-19 policies. But as discussed above, Washington and Bush may not be held liable on that basis. And Morris does not allege that Washington or Bush were personally aware that the policies were disregarded, nor does he

10

allege that they were personally involved in the COVID-19-positive inmates' cell placements. *See Sanders v. Washington*, 2022 WL 575179, at *17 (plaintiff failed to allege Washington's personal involvement in determining inmate cell placement or that she was aware the plaintiff's cellmate had tested positive for COVID-19). Thus, Morris fails to allege Washington and Bush's personal involvement.

Morris also fails to allege how warden Floyd or assistant deputy warden Clifton were personally involved. He does not explain their roles in any alleged failure to implement DOM 2020-30R7 or other policies. *See Evans v. Rauman*, No. 2:21-cv-244, 2022 WL 304554, at *5 (W.D. Mich. Feb. 2, 2022) (allegations that the warden and deputy warden failed to "implement or comply" with DOMs were conclusory, as the plaintiff failed to identify specific actions that caused inadequate conditions during his confinement); *Rouse v. Washington*, No. 20-cv-11409, 2021 WL 2434196, at *9 (E.D. Mich. June 15, 2021) (same). Although Morris broadly alleges that the decision to move the COVID-19-positive inmates to Morris's unit came from "higher above" and that these inmates were "known" to have tested positive, ECF No. 1, PageID.17, he does not allege that Floyd or Clifton personally approved unit placements or that they were aware of any prisoner's COVID-19 status. *See Sanders v. Mcauley*, No. 1:22-cv-18,

11

2022 WL 1183425, at *21 (W.D. Mich. Apr. 21, 2022) (personal involvement was not sufficiently pleaded when the plaintiff did not allege the warden's involvement in cell placement or knowledge that other inmates tested positive).

Even if DOM 2020-30R7 were not implemented at JCS, Morris has not alleged that any defendant was aware of that fact or that they were personally involved in the policy violations.  If Morris intended to allege that defendants failed to adequately supervise their subordinates, such a claim would fail since "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  See *Iqbal*, 556 U.S. at 676; see also *George v. Whitmer*, No. 20-cv-12579, 2021 WL 2349319, at *6 (E.D. Mich. Apr. 13, 2021), *adopted in part at* 2021 WL1976314 (E.D. Mich. May 18, 2021).  To hold a supervisor liable, a plaintiff must prove that the official "encouraged the specific incident of misconduct or in some other way directly participated in it" or "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted).  Morris makes no such allegations here.

Morris asserts that defendants were personally involved because they handled his grievance complaints, thus failing to remedy the alleged wrongs. ECF No. 27, PageID.235. But a defendant's participation in the grievance process does not show his personal involvement in a constitutional violation. *Shehee*, 199 F.3d at 300; *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2003). Thus, Morris does not adequately allege defendants' personal involvement.

**3.**

Defendants also argue that they are entitled to qualified immunity. ECF No. 24, PageID.135-142. Qualified immunity applies when the defendant did not violate a clearly established constitutional right. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). As discussed above, Morris has failed to plead facts stating a plausible claim that defendants violated his Eighth Amendment rights. Thus, defendants are entitled to qualified immunity.

**4.**

Morris's complaint includes a state-law claim for intentional infliction of emotional distress. ECF No. 1, PageID.7. Because Morris's Eighth Amendment claim lacks merit, the case does not retain a federal character. Under 28 U.S.C. § 1367(c)(3), the court should decline to extend

13

supplemental jurisdiction over Morris's state-law claim and dismiss it without prejudice. *See Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 436 (6th Cir. 2013) ("28 U.S.C. § 1367 allows a district judge to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction." (ellipsis omitted)).

### III. Conclusion

The Court **RECOMMENDS** that defendants' motion for to dismiss (ECF No. 24) be **GRANTED** and that Morris's complaint be **DISMISSED**.

s/Elizabeth A. Stafford  
ELIZABETH A. STAFFORD  
United States Magistrate Judge

Dated: May 19, 2022

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 19, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
